**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DENEENA THOMAS, individually
and on behalf of all others similarly situated                    PLAINTIFFS

v.                                    **Case No. 4:14-cv-00562-KGB**

UNITED METHODIST CHILDREN'S HOME, INC.,
and METHODIST FAMILY HEALTH, INC.                           DEFENDANTS

<u>**ORDER**</u>

Plaintiff Deneena Thomas brings this action on behalf of herself and all others similarly situated and alleges violations of the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated § 11-4-201 *et seq.*

Before the Court is Ms. Thomas's motion for certification of collective action, disclosure of potential opt-in plaintiffs' contact information, and a proposed notice (Dkt. No. 10). Defendants Methodist Family Health, Inc. ("MFH") and United Methodist Children's Home, Inc. ("UMCH") have responded (Dkt. No. 12), and Ms. Thomas has replied (Dkt. No. 13). Also before the Court is defendants' motion for leave to file a sur-reply in opposition to Ms. Thomas's motion (Dkt. No. 14). Ms. Thomas has not responded or objected to defendants' motion, and the time for responding has passed. The Court grants defendants' motion for leave and will consider the sur-reply attached to defendants' motion (Dkt. No. 14-1). For the reasons that follow, the Court grants in part and denies without prejudice in part Ms. Thomas's motion for approval of notice and consent to join collective action (Dkt. No. 10).

## I.     Factual Background

UMCH has eight therapeutic group home locations within Arkansas and an emergency shelter in Little Rock.  Under a management agreement, MFH manages the day-to-day activities, including employer/employee duties, at each of the UMCH campuses.  Defendants provide emotional and behavioral healthcare services to children and families in Arkansas.  Ms. Thomas was formerly employed as a direct care worker for defendants from February 2010 through May 2014.  Ms. Thomas alleges in her complaint that defendants underpaid her and other direct care workers through the use of salary compensation and improperly misclassifying her and other direct care workers as exempt from the FLSA's minimum wage and overtime requirements (*see* Dkt. No. 1, ¶ 8, 27, 57).

After Ms. Thomas filed her complaint, two additional opt-in plaintiffs asked to join this lawsuit—Abraham Woodard, Jr., and Nico Washington.  Ms. Thomas, Mr. Woodard, and Ms. Washington each provided a declaration in support of Ms. Thomas's motion.  According to their respective declarations, Mr. Woodard was employed with defendants from 2008 through April 2014, and Ms. Washington was most recently employed with defendants from March 2010 through April 2013.  Ms. Thomas, Mr. Woodard, and Ms. Washington were employed at the defendants' emergency shelter/group home location in Little Rock.  In addition, Ms. Thomas states that she occasionally filled in when needed at the defendants' group home location in Searcy, Arkansas, and Ms. Washington states she often filled in at the group home locations in Searcy and Heber Springs, Arkansas.

Ms. Thomas seeks to represent a class of direct care workers with two job titles: Behavioral Instructor ("BI") and Alternate Teaching Parent ("ATP").  Ms. Thomas, Mr. Woodard, and Ms. Washington each state that they originally were employed as BIs.  Ms.

Thomas and Ms. Washington state in their declarations that, in 2011, the company changed their job titles and the job titles of other direct workers in the group home settings to ATP, while Mr. Woodard states that his title changed sometime towards the end of his employment. All three individuals state that their job duties remained the same, despite the change in job title. In addition, according to Ms. Thomas's briefing and plaintiffs' declarations, Alicia Gammon, the director of the group home program, notified direct care workers in November of 2011 that the pay policies were changing and, as result, that direct care workers would no longer receive overtime pay for work in excess of 40 hours per week. Ms. Thomas and Ms. Washington state in their declarations that this policy applied to all direct care workers at all of defendants' group homes, while Ms. Thomas also claims to have had "personal interactions" with other employees of the defendants who allegedly were not compensated for overtime as required under the FLSA (Dkt. No. 10-1).

Defendants assert that the ATP position is exempt from the requirements of the FLSA, while the BI is a non-exempt position. Defendants have submitted MFH's position descriptions for both the ATP and BI positions (Dkt. No. 12-1). The program descriptions list ATP as a salaried position in which the individual employee performs managerial duties and is required to have a bachelor's degree from an accredited university. The BI position, however, only requires an individual to have 60 hours of college credit and is not a salaried position. Both positions report to a program consultant and, according to plaintiffs, are subject to the compensation policies administered by Ms. Gammon.

For her FLSA claims, Ms. Thomas's motion seeks conditional certification of a collective action consisting of the following proposed class: "All Direct Care Workers, defined as employees having the title 'Behavioral Instructor' or 'Alternate Teaching Parent,' who worked

for Defendants at any Group Home within Arkansas within the three years prior to the filing of Plaintiff's Complaint." (Dkt. No. 10, ¶ 4; *see* Dkt. No. 11, at 7). In her reply, Ms. Thomas subsequently amends her proposed class to include two subclasses consisting of: (1) direct care workers with the BI title and (2) direct care workers with the ATP title.

## II.  FLSA Collective-Action Certification

Section 216(b) of the FLSA provides that any one or more employees may maintain an action to recover the liability prescribed in that section against any employer on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party plaintiff to such action, an employee must "opt in" by filing written consent to become a party to the suit. *Id.* The intent of collective actions is to "serve the interests of judicial economy and to aid in the vindication of Plaintiffs' rights." *In re Pilgrim's Pride Fair Labor Standards Act Litig.*, MDL 1:07-CV-1832, 2008 WL 4877239, at 2 (W.D. Ark. Mar. 13, 2008) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 (1989)).

### A.  Standard For Conditional Certification

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases:  a notice stage and a decertification stage. At the notice stage, the court determines whether notice should be given to potential class members based on the pleadings and affidavits. The key issue is whether the members of the proposed class are similarly situated. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012) ("[T]he fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'") (quoting *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005)). If the court allows notification, then a representative class is conditionally certified and notice is sent to the putative opt-in plaintiffs. At the second stage, the

court determines whether to decertify the class once discovery is largely complete.  *Smith v. Frac Tech Services, Ltd.*, No. 4:09-cv-679, 2009 WL 4251017 (E.D. Ark. 2009).

Plaintiffs' burden at the notice stage is lenient and usually met by making a "modest factual showing"—typically through the submission of affidavits—that plaintiffs and the putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion.  *Resendiz–Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106–08 (10th Cir. 2001).  Plaintiffs' burden is not rigorous:  plaintiffs must only show that there is a "colorable basis for their claim" and that "a class of similarly situated plaintiffs exists."  *Smith*, 404 F. Supp. 2d at 1149.  Plaintiffs can satisfy their burden through the introduction of detailed factual allegations supported by affidavits, "but they may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations."  *Butcher v. Delta Mem'l Hosp.*, No. 5:12CV00241 SWW, 2013 WL 1668998, at 2 (E.D. Ark. Apr. 17, 2013) (internal citations omitted).  Plaintiffs need not show that their positions are or were identical to the putative class members' positions, only that their positions are or were similar to those of the absent class members.  *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

During the notice stage, the Court does not make findings on legal issues or focus on whether there has been an actual violation of the law.  *In re Pilgrim's Pride*, MDL 1:07-CV, 2008 WL 4877239, at 3 (citing *Thiessen*, 267 F.3d at 1106-07).  Instead, the focus of the Court's inquiry is "on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated."  *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 835 (N.D. Ohio 2011) (internal quotations and citation omitted).  Further, the court "does

not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007).  A stricter standard is applied at the decertification stage, in which the essential question is "whether the difference among the plaintiffs outweighs the similarities of the practices to which they were allegedly subjected." *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959 (W.D. Tenn. May 17, 2011) *aff'd*, 699 F.3d 869 (6th Cir. 2012), *cert. denied* 134 S.Ct. 296 (2013).  This case is at the first stage of conditional certification, and thus the Court's inquiry is whether the proposed plaintiffs are similarly situated such that it would be warranted to allow notification to proposed plaintiffs.

The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated including:

> (1) whether the plaintiffs hold the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar.

*Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-cv-843 KGB, 2012 WL 5185869, at *3-4 (E.D. Ark. Oct. 18, 2012) (citing *Stone v. First Union Corp.*, 203 F.R.D. 532 (S.D. Fla. 2001)).

### B.    Whether Plaintiffs Are Similarly Situated

Ms. Thomas originally alleged that the proposed class should consist of all direct care employees holding the BI and ATP titles.  In response, defendants argued in part that BIs and ATPs are not similarly situated positions in that defendants, during all times relevant to this litigation, classified BIs as non-exempt and ATPs as exempt under the FLSA; defendants request, if the Court grants certification over their objections, that the Court limit the scope of the class to those employed as ATPs at only the Little Rock emergency shelter.  In her reply, Ms.

Thomas concedes that there is a difference between BI and ATP employees and proposes to define subclasses with regard to these positions.  For the reason that follow, the Court grants the motion as to the ATP subclass and denies without prejudice on the record before it the motion as to the BI subclass.

Ms. Thomas, Mr. Woodard, and Ms. Washington in their allegations contend essentially that they were denied overtime pay when they served as ATPs, after their job titles changed from BI to ATP.  These allegations may support certifying a collective action of ATPs during the relevant period; they do not support certifying a collective action of BIs during that same period.

In her reply, Ms. Thomas states that "it may be that Plaintiffs' job titles and FLSA classification changed at the same time, but because their duties did not change, Plaintiffs simply did not realize that Defendants considered the change of title a 'promotion' to an overtime exempt position."  (Dkt. No. 13, at 2-3).  This does little to clarify how Ms. Thomas and the opt-in plaintiffs allege FLSA violations strictly with regard to employees employed as BIs.  On the record before it, the Court sees no allegations or factual support for certifying a collective action of BIs and, therefore, denies that request.  For this reason, the Court will limit the remainder of its consideration of Ms. Thomas's motion to whether the Court should certify a collective action based on her proposed subclass of ATPs.

As to the next factor, the geographic location requirement is not a conclusive factor in determining whether plaintiffs are similarly situated for purposes of certification.  In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1219 (11th Cir. Fla. 2001), the court held that geographic location is not a conclusive factor and that the plaintiffs worked in multiple different regions within Florida did not preclude certification in the initial stage.  In *Davis v. Novastar Mortgage., Inc.*, 408 F. Supp. 2d 811, 813 (W.D. Mo. 2005), the court granted

certification even though the defendants owned locations across the United States because the treatment of the opt-in class was the same throughout all of the locations.  Here, all of defendants' facilities are located within Arkansas, and there is no assertion that defendants' payment policies differed between locations.  The Court finds that the geographic location weighs in favor of conditional certification of the proposed subclass of ATPs.

The presence of a policy to deny overtime payment to exempt employees is sufficient to establish that employees are similarly situated.  In *Keef v. M. A. Mortenson Co.*, 2008 U.S. Dist. LEXIS 59076, at *5 (D. Minn. Aug. 4, 2008), plaintiff and coworkers were considered similarly situated because they were subjected to a policy of denying overtime to exempt employees.  The employees in *Keef* were field engineers who had no management duties, performed clerical duties, and regularly worked more than 40 hours per week.  *Id.*  In *Brennan v. Qwest Communications International*, 2008 U.S. Dist. LEXIS 27080, at *10 (D. Minn. Mar. 25, 2008), plaintiffs met their burden for certification by establishing that they were subject to a policy to deny overtime compensation even though their jobs regularly required plaintiffs to work more than 40 hours per week.

Here Ms. Thomas, Mr. Woodard, and Ms. Washington claim to have been subjected to the same policy regarding overtime compensation.  Together they claim that the nature of direct care worker's job duties required them to work more than 40 hours per week and that defendants, through Ms. Gammon, implemented a policy to end overtime pay to direct care workers.  Their factual allegations support their claim that this occurred when they became ATPs.  Defendants do not deny that they did not pay overtime compensation to ATPs or that the refusal to pay overtime to ATPs was their policy, but instead, defendants argue that Ms. Thomas, Mr. Woodard, and Ms. Washington, and others employed as ATPs, were exempt from receiving

overtime compensation.  At this initial stage, Ms. Thomas, Mr. Woodard, and Ms. Washington have met their lenient burden to establish a common policy among defendants' direct care workers holding the title of ATP that was carried out by the same decision maker.  For these same reasons, the Court finds that the allegations, and the time period of the alleged violations, are sufficiently similar.

At this stage of the litigation, based on the record before the Court, the Court finds that Ms. Thomas has met her lenient burden to show that the proposed subclass of ATP employees are similarly situated.

### C.       Interest of Putative Class Members

The parties dispute whether Ms. Thomas has demonstrated that putative class members are interested in joining the suit.  The courts are split with regard to whether and how plaintiffs must demonstrate that "those similarly-situated, putative class members are interested in joining the suit." *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp.2d 173, 179 (D. Mass. 2008); *see, e.g.*, *Amendola v. Bristol–Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008) (not requiring showing); *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008) (requiring showing).  Courts in the Eighth Circuit are no exception.  *See, e.g.*, *Musticchi v. Little Rock*, No. 4:08-cv-00419 (E.D. Ark. Feb. 2, 2009) (requiring showing); *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97 (S.D. Iowa 2008) (requiring showing); *Kautsch v. Premier Commc'ns*, 504 F. Supp.2d 685 (W.D. Mo. 2007) (not requiring showing).

Ms. Thomas contends that she is not required to show interest but has satisfied this standard, even if such a showing is required.  Ms. Thomas claims that she spoke with other employees who told her of their own similar problems with defendants' alleged change of policies and refusal to pay overtime for overtime hours.  Ms. Thomas states that, based on these

conversations, she believes others will want to opt into the lawsuit.  Ms. Thomas contends that

the other employees' statements and the fact that Mr. Woodard and Ms. Washington have filed

consents to opt-in demonstrate sufficient interest.  Defendants argue that Ms. Thomas's

conversations with other possible class members are hearsay and should not be considered

evidence of interest in joining the action;  defendants fail to consider the more important fact that

Ms. Thomas, along with Mr. Woodard and Ms. Washington, worked at Little Rock, Searcy, and

Heber Springs locations and witnessed defendants' policies and practices at those locations.

These facts, along with Ms. Thomas's conversations with other possible class members, creates

the appearance that others might wish to join the lawsuit if given notice.

Assuming without deciding that the FLSA requires an employee to demonstrate that other

employees are interested in joining the action, the Court finds that Ms. Thomas has met that

burden here.  *See Ware v. T-Mobile USA*, 828 F.Supp.2d 948, 955 (M.D. Tenn. 2011) (finding

sufficient interest where one employee opted into the action); *Daniel v. Quail Int'l Inc.*, No. 2008

WL 3538564 (M.D. Ga. 2008) (finding sufficient interest where one employee consented to join

and there was some evidence that others would likely join if they received notice); *Guerra v. Big

Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 (S.D. Fla. 2006) (finding sufficient interest

where at least one other employee wished to join); *Watson*, 2012 WL 5185869, at *3.

### D.    Notice to Potential Class Members

The Court next considers the form and dissemination of notice.  As to the temporal scope

of the class, an action under the FLSA must be commenced within two years after the alleged

violation occurs unless the plaintiff can demonstrate that the employer's conduct was willful, in

which case the limitations period is three years.  29 U.S.C. § 255(a).  An action is commenced

under the FLSA when a party files suit.  29 U.S.C. § 256(a).  In the case of a collective action, the action is commenced upon the filing of a written consent to join.  29 U.S.C. § 256(b).

Ms. Thomas seeks to define the scope of the class using the three-year limitations period; defendants request that the class and notice be limited by the two-year limitations period. Because Ms. Thomas alleges willful violations of the FLSA, (*see* Dkt. No. 1, ¶ 6), notice will be provided to all potential class members within the three-year limitations period.  *See Kautsch*, 504 F. Supp. 2d at 690 (approving notice that assumed three-year limitations period and determining: "At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs"); *Burch*, 500 F. Supp. 2d at 1191 ("Exclusion of potential plaintiffs based on application of the two-year statute of limitations would be premature at this juncture").

The Court notes that, in her complaint, Ms. Thomas seeks equitable tolling on the allegation that defendants failed to post appropriate notices of employees' rights under the FLSA (Dkt. No. 1, ¶¶ 90-94).  Ms. Thomas does not mention equitable tolling in her motion or briefing. Further, courts often decline to rule on equitable tolling at the notice stage, reserving for a later date determination as to the timeliness of opt-in plaintiffs' claims.  *See, e.g.*, *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (collecting cases and denying request for equitable tolling "with the understanding that individual plaintiffs may seek such tolling upon demonstrating its applicability.")  Accordingly, the Court will not address equitable tolling at this time.

Ms. Thomas has presented a proposed notice which she states was approved in several other cases in this district (Dkt. No. 10-5).  Defendants request that the notice be limited to ATP employees at the Little Rock emergency shelter in the event that the Court finds certification to

be proper.  For the reasons stated in this Order, the Court grants the request to limit the class and notice to ATP employees but denies defendants' request to limit the class and notice to the Little Rock emergency shelter.  It is not clear from the record before the Court whether defendants employ ATPs at all of defendants' locations.  However, because it appears that defendants' employees may work at multiple locations, the Court approves notice as to all employees who held the position of ATP at defendants' locations, without exception or limitation as to location, during the relevant period.

Ms. Thomas requests to notify potential opt-in plaintiffs through four different methods: (1) U.S. mail, (2) email, (3) posted notice in a conspicuous location at each of defendants' locations, and (4) a postcard sent to each potential opt-in plaintiff who has failed to respond within 30 days of original notice.  Defendants object to disseminating notice in any form other than standard U.S. mail and limited posting at its Little Rock emergency shelter.  The Court grants Ms. Thomas's request to disseminate notice through U.S. mail, email, and posting at each of defendants' locations.

The Court denies Ms. Thomas's request to disseminate notice through postcards to each potential opt-in plaintiff who fails to respond within 30 days to the original notice.  Ms. Thomas and her counsel claim that the postcard method is an effective way to ensure that there are no problems reaching the opt-in plaintiffs through U.S. mail.  The Court finds this unpersuasive. The Court denies without prejudice the request to send postcards and does not foreclose Ms. Thomas's ability to renew this request upon a further showing of an undue hardship in contacting opt-in plaintiffs through other methods of disseminating notice.

The parties are directed to confer and to submit to the Court a revised proposed notice within 10 days of the date of this Order.  Once the revised proposed notice is approved as to

form, it shall be sent by first-class mail to all potential class members, shall be posted by defendants in the workplace, and emailed to all potential class members' last known email addresses. To facilitate notice, the Court orders defendants to provide Ms. Thomas' counsel with a list (in electronic format) of the names, employee numbers, last known home, work, and email addresses and telephone numbers of each potential class member within 14 days of the date of this Order. Plaintiffs shall have 60 days thereafter to distribute the notices and file opt-in consent forms with the Court.

***

For these reasons, this Court grants in part and denies without prejudice in part Ms. Thomas's motion for approval of notice and consent to join collective action under the FLSA (Dkt. No. 10). The Court conditionally certifies a class consisting of all ATPs or Alternate Teaching Parent employees of Methodist Family Health, Inc., and United Methodist Children's Home, Inc., employed within the three (3) years preceding September 23, 2014, and continuing thereafter through the date on which final judgment is entered in this action and who timely file a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b).

SO ORDERED this the 25th day of June, 2015.

_____
Kristine G. Baker
United States District Judge